**CAREMEDIC SYSTEMS, INC.,**

    Plaintiff,

v.                                                   Case No.  8:06-CV-1185-T-30MSS

**THE HARTFORD CASUALTY**
**INSURANCE COMPANY,**

    Defendant.

_____

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court upon cross-motions for summary judgment (Dkts. 43 and 50) and the parties' responses in opposition thereto (Dkts. 51; 52; 56; and 57). Having considered the motions and attached exhibits, relevant case law, and the record evidence, viewed in the light most favorable to the non-moving party, and being otherwise advised in the premises therein, the Court finds that summary judgment in favor of Defendant is appropriate.

### Statement of Facts

Incorporated in Delaware, CareMedic Systems, Inc., ("CareMedic") is a financial management company that provides its clients with access to proprietary software allowing real-time billing to Medicare. CareMedic's principal place of business is located in St. Petersburg, Florida.

CareMedic purchased a commercial business liability insurance policy ("the Policy") from the Hartford Casualty Insurance Company ("Hartford"). Among other things, the Policy provided:

> We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance policy applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .
>
> "Personal and Advertising Injury" means injury, including consequential "bodily injury" arising out of: . . . . [o]ral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

Dkt. 44-2 at 59; 77. The Policy was effective from November 11, 2003, through November 11, 2004.

Michael Vasquez, cofounder and CEO of CareMedic since its founding in October 1996, was terminated by CareMedic's Board of Directors on September 3, 2004. Vasquez filed suit in an Iowa state court against CareMedic, its president and chief operating officer Sheila Schweitzer, and its chief financial officer Joe Dunham, on October 11, 2004.[1] A copy of the Vasquez Complaint was filed with CareMedic's complaint in these proceedings, see Dkt. 1-2.

In his complaint, Vasquez alleged that Schweitzer and Dunham approached him seeking support for an improper "kick back scheme" involving CareMedic stock (Dkt. 1-2 at ¶¶ 3, 4, and 18-21). According to Vasquez, once he voiced disapproval of their stock

---

[1] Vasquez v. CareMedic Systems, Inc., et al., Case No. CL 97070 (Iowa Dist. Ct. Polk Co. 2004) ("Vasquez Complaint").

acquisition scheme and other activities Schweitzer and Dunham were engaged in that Vasquez believed were not in CareMedic's best interests, Vasquez was terminated from his position as CareMedic's CEO. Id. at ¶ 55.

Vasquez further alleged that Schweitzer and Dunham made statements about him to clients in the health care industry and CareMedic shareholders that "disparaged, defamed, and slandered him and/or his services." According to Vasquez, Schweitzer and Dunham knew at the time that the statements they were making about him were false. Vasquez further asserted that the statements made by Schweitzer and Dunham would reasonably be understood to injure Vasquez. Id. at ¶¶ 60, 61, 67, and 68. Vasquez filed suit against Schweitzer and Dunham for wrongful termination (Count I),[2] slander *per se* (Count II), and slander *per quod* (Count III),[3] and a claim for damages against CareMedic under the theory of respondeat superior (Count V).[4]

Upon receipt of the Vasquez Complaint, CareMedic forwarded it to Hartford, asserting that Hartford had a duty to defend and indemnify it and its officers under the terms of the Policy. On or around December 3, 2004, Hartford refused to defend or indemnify CareMedic, Dunham, and Schweitzer (collectively, the "Insured") with regard to the Vasquez Complaint under Exclusion p(1) of the Policy, which states that coverage is excluded for

---

[2]The parties are agreed that Count I of the complaint is outside the scope of CareMedic's business liability policy.

[3]Under Iowa law, a slander *per se* occurs when a defamatory statement implicates, *inter alia*, one's incompetence in his or her profession. See Lara v. Thomas, 512 N.W.2d 777, 785 (Iowa 1994). Plaintiffs asserting a slander *per se* action do not need to prove special damages, whereas a cause of action for slander *per quod* does require the plaintiff to do so.

[4]The four counts in the complaint are incorrectly labeled Counts I, II, III, and V.

damages arising from "the publication of material if done by or at the direction of the insured *with knowledge of its falsity*." Hartford again disclaimed any duty to defend or indemnify the Insured on October 14, 2005, under exclusion (a)(2), which states, in pertinent part, that coverage is excluded for "'personal and advertising injury' arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury.'" Dkt. 44-2 at 4.

On June 26, 2006, CareMedic filed the instant complaint against Hartford alleging that coverage of Vasquez's claims for slander existed under the Policy that required Hartford to defend and indemnify the Insured in the Vasquez litigation (Dkt. 1 at ¶¶ 17, 21, 30 and 38). CareMedic is seeking to recover attorney's fees and costs it incurred in defending against the Vasquez Complaint, as well as the money it expended in settlement of the Vasquez suit. The parties have reached a resolution of the damages, contingent upon the Court's legal determination of whether Hartford had a duty to defend CareMedic in the underlying Vasquez litigation.

**Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion. "The requirement is that there be

no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action identifies which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in his favor. Id. at 255.

**Legal Analysis**

The Court's jurisdiction is based upon diversity, see 28 U.S.C. § 1332, and the case arises under Florida law.[5] In diversity cases arising under Florida law, a federal court is bound by the law articulated by the Florida Supreme Court. See Shapiro v. Associated Int'l Ins. Co., 899 F.2d 1116, 1118 (11th Cir. 1990). If the Florida Supreme Court has not spoken on an issue, Florida District Court of Appeals decisions control absent persuasive indication that the Florida Supreme Court would rule otherwise. See Blanchard v. State Farm Mut. Auto. Ins. Co., 903 F.2d 1398, 1399 (11th Cir. 1990).

In an action to determine insurance coverage, Florida courts place the "burden of proving that a claim against it is covered by the insurance policy" on the insured. LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir. 1997). The insurer then has the burden of proving an exclusion to coverage. Id. In evaluating a duty to defend claim under Florida law, courts are required to look at the facts alleged in the underlying complaint, not

---

[5]Adhering to the rule of *lex loci contractus*, the Florida Supreme Court has held that the "rule, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." State Farm Mut. Auto. Inc. Co. v. Roach, 945 So.2d 1160, 1163-64 (Fla. 2006). Because the parties have agreed that Florida law governs the instant dispute, the Court will apply Florida law to interpret the Policy without conducting a choice of law analysis. See Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., 139 F.3d 1396, 1407 (11th Cir. 1998).

those facts necessary to prove the asserted cause of action at trial. See State Farm Fire & Cas. Co. CTC Development Corp., 720 So.2d 1072, 1077 n.3 (Fla. 1998). To the contrary, it is the nature of the claim, not the actual facts underlying the claim, that is used in the comparison. "[A]n insurer has no duty to defend a suit against an insured if the complaint upon its face alleges a state of facts that fails to bring the case within the coverage of the policy." McCreary v. Florida Residential Property and Casualty Joint Underwriting Ass'n, 758 So.2d 692, 695 (Fla. 4th DCA 1999).

Under Florida law, if the allegations of the complaint *state facts* bringing the injury within the coverage of the policy, the insurer must defend regardless of the merits of the lawsuit. See Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc., 771 So.2d 579, 580-81 (Fla. 4th DCA 2000) (emphasis added); see also State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230-31 (11th Cir. 2004) (citing Amerisure). Thus, an insurer's duty to defend an insured in an action, whether groundless or not, must be measured by the allegations of the complaint. Barry University, Inc. v. Fireman's Fund Ins. Co. of Wisconsin, 845 So.2d 276, 278 (Fla. 3rd DCA 2003) (citation omitted). If any of the allegations in the underlying complaint fall within the policy of insurance, the duty to defend is triggered. Sunshine Birds and Supplies, Inc., v. United States Fidelity and Guaranty Company, 696 So.2d 907, 910 (Fla. 3rd DCA 1997) (where plaintiff in underlying litigation alleged, *in the alternative*, that insureds had actual *or* constructive knowledge of their employees' proclivity to molest young children, the policy's intentional acts exclusion barring coverage for "bodily injury expected or intended from the standpoint of the insured" did not relieve insurer of duty to defend).

When evaluating a duty to defend, the insurance company must accept the allegations in the complaint as true. Tropical Park, Inc. v. United States Fidelity and Guaranty Co., 357 So.2d 253, 256 (Fla. 3rd DCA 1978). If, however, the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend. See Landis v. Allstate Insurance Co., 546 So.2d 1051, 1052 (Fla. 1989); Demshar v. AAACon Auto Transp., Inc., 337 So.2d 963, 965 (Fla. 1976). Wording, alone, in a pleading does not, however, create a duty to defend. See Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc., 771 So.2d at 582 (use of "buzz words" in a complaint will not trigger coverage when the cause of action is for a non-covered act).

In Florida, exclusionary clauses in liability insurance policies are construed liberally in favor of the insured and strictly against the insurer. Union American Ins. Co. v. Maynard, 752 So.2d 1266, 1268 (Fla. 4th DCA 2000). It is well established that under Florida law, "if the [underlying] complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit." Lime Tree Village Community Club Ass'n, Inc. v. State Farm General Ins. Co., 980 F.2d 1402, 1405 (11th Cir. 1993) (quoting Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 813-14 (Fla. 1st DCA 1985)).

As stated above, Hartford's refusal to defend and indemnify the Insured in the Valdez litigation is the basis for the present action. Hartford's position was, and remains, that the factual allegations in the Vasquez Complaint "clearly and unambiguously fall within the

scope of . . . exclusion [p(1)]." Thus, Hartford reasons, its duty to defend CareMedic was not triggered in the Vasquez litigation.

As relevant here, Vasquez alleged the following in his Complaint:

36. On August 20, 2004, Defendant Dunham met with shareholders of CareMedic from Principal Financial, Iowa Capital Corporation, and Iowa Farm Bureau.

37. At that meeting, Defendant Dunham made statements to CareMedic shareholders about Plaintiff Vasquez.

38. Upon information and belief, Defendant Dunham made statements to shareholders that Plaintiff Vasquez was no longer with CareMedic.

39. As of August 20, 2004, Plaintiff Vasquez had neither resigned his position nor had the CareMedic board of directors terminated his employment. Defendant Dunham's statement was false.

. . . . . .

47. On September 28, 2004, Defendant Schweitzer held a conference call with health systems clients St. Thomas, Tenet Healthcare, Stanford Medical Center, and Health South.

48. Defendant Schweitzer made statements about Plaintiff Vasquez to the health systems clients of CareMedic.

49. Defendant Schweitzer falsely stated to clients that Plaintiff Vasquez had left the company to pursue other opportunities and start a new venture and that he had just left "last week."

50. Defendant Schweitzer falsely stated to clients that Plaintiff Vasquez left CareMedic because he did not want to raise money or do acquisitions.

. . . . .

Count II: Slander *Per Se*

. . . . .

60. Defendants Dunham and Schweitzer made statements to clients or shareholders of CareMedic about Plaintiff [Vasquez]. *Those statements were false and known by Defendants to be false*.

61. The statements made by Defendants Dunham and Schweitzer would reasonably be understood to injure or damage Plaintiff [Vasquez] in the maintenance of his business.

63. Defendants *acted willfully* and recklessly and with *intentional and willful* disregard of the rights of Plaintiff [Vasquez] and for the consequences of their actions, Plaintiff [Vasquez] is entitled to punitive damages.

Count III: Slander *Per Quod*

. . . . .

65. Defendants Dunham and Schweitzer made oral statements about Plaintiff Vasquez as referenced herein.

66. Defendants Dunham and Schweitzer made the statements about Plaintiff Vasquez to clients or shareholders of CareMedic.

67. Defendants Dunham and Schweitzer *knowingly* made false statements about Plaintiff [Vasquez].

68. The statements would reasonably be understood to injure or damage the Plaintiff [Vasquez] in his efforts to maintain his business.

69. By reason of the false statements made by Defendants, Plaintiff [Vasquez] was defamed and damaged in name, reputation and business of raising capital for future ventures and to create future income. . . .

70. Defendants' conduct was willful and with the malicious design and purpose of injuring and damaging Plaintiff. . . .

Count V: Respondeat Superior

72. Defendant CareMedic is liable for the *intentional and negligent conduct* of Defendants as it was foreseeable and their conduct was within the course and scope of their employment with Defendant [CareMedic].

Dkt. 1-2.

The Policy provided that Hartford would defend the Insured against claims for damages resulting, *inter alia*, from personal and advertising injury (Coverage A). The policy, however, contains several exclusions from coverage, including personal and advertising injury "[a]rising out of oral, written or electronic publication of material, if done by or at the direction of the insured *with knowledge of its falsity*" (Dkt. 44-2 at 66). Hartford refused to defend CareMedic in the Vasquez action based on the Policy's exclusions to the duty to defend for intent to injure and knowledge of falsity. According to Hartford, the Policy exclusions were triggered by the allegations of willfulness and knowledge of falsity in Counts II and III of the Vasquez Complaint.

The Court uses the plain meaning and ordinary usage of words contained in a contract unless the terms are expressly defined, and ambiguous terms are construed against the insurer, as drafter of the policy. See Anderson v. Auto-Owners Ins. Co., 172 F.3d 767, 769 (11th Cir. 1999); Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000). If the terms of an insurance agreement could reasonably be subject to two interpretations, the interpretation supporting coverage will be used. See State Farm Fire and Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla. 1998).

Here, the record supports Hartford's contention that a comparison of the allegations in the Vasquez complaint to the exclusionary provisions of the Policy demonstrates that Vasquez asserted that the allegedly slanderous statements made by Schweitzer and Dunham were made willfully with "*knowledge of their falsity*" such that coverage was excluded for Schweitzer and Dunham under the Policy.

Since Vasquez premised his only claim against CareMedic on the allegedly tortious conduct set out in Counts II and III of Vasquez's complaint, the finding that Hartford had no duty to defend or indemnify Schweitzer and Dunham is dispositive of the remaining question of whether CareMedic was entitled to coverage on Count V of Vasquez's Complaint invoking the doctrine of respondeat superior. See Medical Staffing Network, Inc. v. New Hampshire Ins. Co., 2001 WL 1147447, at *3 (S.D.Fla. 2001).

Under the doctrine of respondeat superior, "an employer is liable, despite having no fault whatsoever, for the acts of its employees taken within the scope of their employment." Id. (quoting Hamilton v. Carell, 243 F.3d 992, 1001 (6th Cir. 2001); citing Crowell v. Clay Hyder Trucking Lines, Inc., 700 So.2d 120, 123 (Fla. 2nd DCA 1997)). In the underlying litigation, CareMedic was not alleged to have done anything more or different than its officers. Rather, by virtue of respondeat superior, Vasquez sought to impute the tortious conduct alleged to have been committed by CareMedic's officers to CareMedic. For all practical purposes, this was the functional equivalent of an allegation that CareMedic willfully and *knowingly* made false statements that caused Vasquez's injuries. See Moukden, Inc. v. Continental Ins. Co., 716 So.2d 289, 292 (Fla. 3rd DCA1998) (finding that exclusionary provision of policy covering intentional torts applied to the plaintiff's respondeat superior claim where "[the claim of respondeat superior liability . . . clearly "arises out of" the alleged battery . . . . an intentional tort."). Such an allegation falls within the insurance policy's exclusionary provisions, negating CareMedic's entitlement to coverage.

Citing Jensen v. Barlas[6] and Park v. Hill,[7] CareMedic contends that Hartford's duty to defend was triggered because "[s]tatements constituting defamation *per se* (one of the counts in the underlying lawsuit) are actionable without proof of malice, falsity or special harm" under Iowa law[8] so long as the court can "presume as a matter of law that their publication will have a defamatory effect." Id. at 1016. Be that as it may, here the issue is not whether Vasquez stated a claim for slander in his complaint. Rather, the issue is whether, given the assertions in the Vasquez Complaint that Dunham and Schweitzer knew at the time they made the allegedly slanderous statements that the statements were false, which must be taken as true for purposes of resolving a duty to defend dispute under Florida law, the Policy's falsity exclusion relieved Hartford of the duty to defend in the Vasquez litigation. In this case, Florida law is controlling in determining the issue of insurance coverage. See State Farm Mut. Auto. Inc. Co. v. Roach, 945 So.2d at 1164 ("In the case of an insurance contract, the parties enter into that contract with the acknowledgment that the laws of that jurisdiction control their actions. In essence, that jurisdiction's laws are incorporated by implication into the agreement."). As a review of the Vasquez Complaint demonstrates, in

---

[6] 438 F.Supp.2d 988, 998-99 (N.D. Iowa 2006) ("Under Iowa law, to prove a claim (or counterclaim) for defamation, the claimant must prove that the opposing party '(1) published a statement that (2) was defamatory (3) of and concerning the [claimant], and (4) resulted in injury to the claimant.' . . . . In addition, unless the allegedly defamatory statement is defamatory *per se,* the claimant must also prove that the statement was false and was published with malice" (internal quotation marks omitted)) (citing Kiesau v. Bantz, 686 N.W.2d 164, 175 (Iowa 2004)).

[7] 380 F.Supp.2d 1002, 1016 (N.D. Iowa 2005) (recognizing that "'[d]efamation law protects interests of personality, not of property,'" the court held that under Iowa law, "words are defamatory *per se* only if they are of such a nature, whether true or not, that the court can presume as a matter of law that their publication will be defamatory effect") (quoting Schlegel v. Ottumwa Courier, 585 N.W.2d 217, 221 (Iowa 1998)).

[8] See Kerndt v. Rolling Hills National Bank, 558 N.W.2d 410, 418 (Iowa 1997) ("[S]ome statements are defamatory per se; that is, they are of such a nature that the court can presume as a matter of law that their publication will have a defamatory effect, even without a showing by the plaintiff of malice, falsity, or damage. . . . Defamatory statements affecting a person in his or her business, trade, profession, or office fall into this category, as do attacks on a person's integrity and moral character.").

the instant case, the applicability of the policy exclusion for false statements relieved Hartford of any duty to defend CareMedic in the instant case. See Landis v. Allstate Insurance Co., 546 So.2d 1051, 1052 (Fla. 1989).

As Hartford points out in opposition to CareMedic's motion for summary judgment, CareMedic's reliance on the holding in S.M. Brickell Ltd. Partnership v. St. Paul Fire & Marine Ins. Co. in support of its argument that Hartford owed the Insured a duty to defend and indemnify in the Vasquez litigation is also misplaced. 786 So.2d 1204 (Fla. 3d DCA 2001). In Brickell, Susana Hansen and Dora Puig, real estate brokers hired to sell condominiums being developed by Brickell, brought separate suits. Hansen sought recovery against Brickell for sales commissions due and owing and for defamation. Puig sought recovery for breach of contract, defamation, and intentional infliction of emotional distress. Both complaints alleged that the statements at issue were false and known to be false when made. St. Paul denied coverage in both suits relying, in pertinent part, upon the "falsity" exclusion of Brickell's policy. The court agreed with St. Paul. After entry of summary judgment, Puig filed a fourth amended complaint that alleged in the alternative intentional wrongdoing or negligent defamation.[9] On rehearing, the court again entered judgment for St. Paul, finding that the changes in Puig's fourth amended complaint were insufficient as a

---

[9]As set forth in the Brickell decision, Puig's fourth amended complaint alleged, in pertinent part:

86. SM Brickell Limited intentionally, ***recklessly and/or negligently*** disseminated false and defamatory communications about Puig to various third parties. . . .

92. The statements made by SM Brickell Limited's agents, servants and employees against Puig were false and they knew ***and/or should have known*** that they were false when made.

Id. at n.1 1206 (emphasis supplied).

matter of law to create a duty to defend. The appellate court found no error in the court's finding on Hansen's complaint, but reversed as to Puig, finding that her fourth amended complaint "alternatively alleged a cause of action for negligent defamation . . . [that] potentially falls within the coverage of the policy." Id. at 1206. In the instant case, Vasquez alleged in the underlying complaint, specifically and unequivocally, that the statements made by Defendants Dunham and Schweitzer "were false and known by [them] to be false" at the time the statements were made (Dkt. 1-2, Ex. B at 3).

Similarly, CareMedic's reliance on the holding in Orlando Nightclub Enterprises, Inc., v. James River Ins. Co. fails. 2007WL 4247875, at *23 (M.D. Fla. 2007) (asserting claims under §§ 42(1) and 43(a) of the Lanham Act, Florida common law actions for unjust enrichment and unfair competition, and a violation of the Florida Deceptive and Unfair Trade Practices Act). This case is clearly distinguishable. As here, Orlando Nightclub Enterprises' ("ONE") policy included an exclusion for a "[k]nowing [v]iolation of [the] [r]ights of [a]nother." Orlando v. James River Ins. Co., 2007 WL 4247875, at *2. In the complaint filed in the underlying action, the plaintiff asserted that ONE engaged in "intentional" and "knowing" conduct in violation of the plaintiff's trademark, but the elements of the specific claims set out in the complaint did not include intent. Acknowledging that under Florida law, "when a cause of action alleged is one for intentional acts, the insurer has no duty to defend if the subject policy does not provide coverage for intentional misconduct," id. at *5 (citing Nat'l Union Fire Ins. Co. v. Lenox Liquors, 358 So.2d 533, 536 (Fla.1978) (insurer had no duty to defend when the only cause of action alleged in the complaint was one for intentional

acts and the insurance policy did not provide coverage for bodily injury that was intentionally inflicted by the insured); State Farm Fire and Cas. Co. v. Edgecumbe, 471 So.2d 209, 210 (Fla. 1st DCA 1985) (insurer had no duty to defend when the complaint against the insured alleged that she intended to injure a third party and the policy excluded coverage for damage that arose from an incident that was expected or intended); Capoferri v. Allstate Ins. Co., 322 So.2d 625, 627 (Fla. 3d DCA 1975) (where the only cause of action alleged in the complaint was one for an intentional act by the insured, the insurer had no duty to defend because intentional acts were not within the policy's coverage)), the district court concluded that "Florida courts have not answered the question . . . whether there is a duty to defend when the underlying complaint contains factual allegations of knowing, willful, and intentional acts but the causes of action alleged are not ones for intentional harms and can be proven without regard to knowledge or intent." 2007WL 4247875, at *23 (M.D. Fla. 2007). In reaching its decision that the insurer had a duty to defend in the underlying litigation, the district court relied on its review of case law from other jurisdictions. Where, as here, the causes of action set out in the underlying complaint fall squarely within the exclusionary provisions of the Policy – a circumstance that has been addressed by the Florida Supreme Court clearly and unequivocally – this Court must apply the law as enunciated by the Florida Supreme Court. CareMedic's argument to the contrary is unpersuasive.

Having reviewed the other cases relied on by CareMedic in support of its motion for summary judgment, the Court concludes that they are, likewise, unavailing to its cause.

Finally, an insurer is entitled to rely solely on the allegations contained in the complaint in determining whether it has a duty to defend. See ABC Distr. Inc. v. Lumbermens Mutual Ins. Co., 646 F.2d 207, 208-09 (5th Cir. 1981).[10] Acknowledging that Florida has adopted a strict rule in cases involving insurance companies' duty to defend that insurance companies may rely on the allegations of the complaint, the ABC court concluded that "[even] if [the underlying plaintiff] could have gone to trial on a theory of unintentional [] violation . . . the insurance company had a right to rely on the averments of the complaint that the [insured's] actions had been intentional." Id. at 209. Likewise, Hartford had a right to rely on the averments in the Vasquez Complaint that Schweitzer and Dunham knew when they spoke that the statements they were making were false. See Nat'l Union Fire Ins. Co. v. Lenox Liquors, 358 So.2d 533 (Fla. 1977). The Florida Supreme Court's decisions on the duty to defend control here, and CareMedic has given this Court no basis for concluding that there is any indication that it would abandon that analysis were it presented with the facts before this Court.

Based on the plain language used in the Vasquez Complaint, the Court concludes that Hartford properly declined coverage and summary judgment should be granted in its favor. Given this finding, a discussion of the applicability of Exclusion (a)(2), which excludes coverage for "'personal and advertising injury' arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury,'" is not necessary.

---

[10] See Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit announced prior to October 1, 1981).

It is, therefore, **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment (Dkt.50) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Dkt.43) is **GRANTED**.

3. The Clerk is directed to enter summary final judgment in favor of Defendant, terminate all pending motions as moot, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on April 1, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2006\06-cv-1185.sjm 2.wpd